No. 72,324

WILLIAM USSERY, *Appellee*, v. KANSAS DEPARTMENT OF SOCIAL
AND REHABILITATION SERVICES, *Appellant*.
(899 P.2d 461)

Opinion filed July 14, 1995.

*Beth Lange Engle*, of the Kansas Department of Social and Rehabilitation Services, argued the cause, and *Reid Stacey*, of the same department, was on the briefs for the appellant.

*Mary Patricia Hesse*, of Redmond, Redmond & Nazar, of Wichita, was on the brief for the appellee.

The opinion of the court was delivered by

ABBOTT, J.: This case involves judicial review of an agency action. In calculating William Ussery's patient liability for Medicaid benefits, the Kansas Department of Social and Rehabilitation Services (SRS) included as part of his income a court-ordered support obligation to his former spouse. On Ussery's petition for judicial review, the district court reversed the agency's determination that the court-ordered support obligation was available income. The real issue before this court is whether maintenance paid to a former spouse is treated differently than voluntary support or court-ordered maintenance for a current spouse.

The facts are undisputed. On January 4, 1993, William Ussery's wife, Ruby, filed a petition for divorce. On that day, the district court with jurisdiction over the divorce proceedings ordered William Ussery to pay temporary maintenance of $500 per month. On January 17, 1993, Ussery was hospitalized and then was discharged to a nursing home on March 11, 1993, where he remains. Ussery's daughter was appointed as his guardian and conservator. On April 14, 1993, a Journal Entry of Judgment and Decree of Divorce was entered granting the divorce and ordering Ussery to pay Ruby maintenance in the amount of $495 per month. All real and personal property (except Ussery's personal effects), including Ussery's pensions from Getty and Texaco, were awarded to his former

spouse, as were the couple's debts. Only the maintenance is at issue here; the other distribution is not.

On April 16, 1993, Ussery filed an application for Medicaid benefits. On May 28, 1993, Ussery was notified that SRS had approved his Medicaid application and that his eligibility was effective as of April 1, 1993. Ussery's only source of income is $1,060 per month from Social Security. SRS determined that Ussery's share of his medical expenses, the "patient liability" or "patient obligation," was $934.60 per month for April and May and thereafter $970.60 per month.

Ussery's combined monthly patient liability of $970.60 and monthly maintenance obligation of $495 exceed his monthly income of $1,060. Ussery exhausted his administrative remedies in seeking to reduce his patient liability, but his efforts failed. He then filed a petition for judicial review in the district court. The district court held that SRS had erroneously interpreted the law in failing to deduct the court-ordered support obligation from Ussery's "available income." The court declined to address a constitutional argument (denial of equal protection) made by Ussery. The court ordered SRS to recalculate Ussery's patient obligation by deducting the court-ordered support.

SRS timely appealed to the Court of Appeals. In his appellate brief, Ussery asked the Court of Appeals to address the constitutional argument not addressed by the district court. Upon motion by SRS, the Court of Appeals issued an order striking Ussery's appellate argument concerning the constitutional issue. Thereafter, the appeal was transferred to this court on this court's own motion pursuant to K.S.A. 20-3018(c).

Our standard of judicial review of an agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, is statutorily defined. Among the grounds for relief are that the agency has erroneously interpreted or applied the law or that the agency action, or the statute or rule and regulation upon which the agency action is based, is unconstitutional on its face or as applied. K.S.A. 77-621(c)(1), (4).

Background on the federal Medicaid program was recently stated by the Second Circuit Court of Appeals in *Himes v. Shalala,* 999 F.2d 684, 686 (2d Cir. 1993):

"The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, 1396a-u (1988) ('Medicaid Act' or 'the Act'), as a cooperative federal-state program designed to provide health care to needy individuals. Although a state is not required to participate in the Medicaid program, once it chooses to do so it must develop a plan that complies with the Medicaid statute and the Secretary's regulations. [Citation omitted.]

"A state, in administering its Medicaid program, must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. *See* 42 U.S.C. §1396a(a)(17). Those standards must take into account 'only such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of Health and Human Services], *available* to the applicant or recipient.' 42 U.S.C. §1396a(a)(17)(B) (emphasis added)."

Kansas has elected to participate in the Medicaid program. K.S.A. 39-708c gives the Secretary of SRS the power and duty to determine general policies relating to all forms of social welfare and to adopt rules and regulations therefor. K.S.A. 39-708c(s) requires the Secretary of SRS to develop plans financed by federal funds and/or state funds for providing medical care for needy persons. Pursuant to that statute, the Secretary of SRS adopted regulations found at K.A.R. 30-6-34 *et seq*. SRS has also published the Kansas Public Assistance Manual (KPAM), detailing Medicaid eligibility and benefits.

Both parties agree that Ussery was determined to be eligible for Medicaid benefits. The issue here is not whether Ussery is eligible for benefits, but rather the extent of his patient liability. "Patient liability" for Medicaid care is defined as "the amount that the individual is required to pay towards the cost of care which the individual receives in an institutional arrangement. Patient liability is based on the amount of applicable income that exceeds the protected income level in the eligibility base period." K.A.R. 30-6-53(a)(3) (1993 Supp.). Ussery contends that the court-ordered support obligation to his ex-wife should reduce his patient liability.

The trial court cited three statutes and regulations in its decision giving Ussery a reduction for the maintenance order. First, the court cited 42 U.S.C. §1396a(a)(17)(B) (1988) in framing the issue, the text of which is quoted here:

"(a) A State plan for medical assistance must—

. . . .

(17) except as provided in subsections (l)(3), (m)(3), and (m)(4) of this section, include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account *only such income and resources as are,* as determined in accordance with standards prescribed by the Secretary, *available to the applicant or recipient* and . . . as would not be disregarded . . . in determining his eligibility for such aid, assistance, or benefits . . . ." (Emphasis added.)

The trial court also cited 42 U.S.C. §1396r-5 (1988) and K.A.R. 30-6-106(m)(2) and (3) (1993 Supp.). These provisions grant a monthly income allowance for the community spouse or family of an institutionalized spouse; the amount of that allowance shall not be considered in calculating the amount of patient liability.

The trial court's reasoning consists primarily of quotes from *Emerson v. Wynia,* 754 F. Supp. 705 (D. Minn. 1991). That case was reversed by the Eighth Circuit Court of Appeals in *Emerson v. Steffen,* 959 F.2d 119 (8th Cir. 1992). The trial court also cited *Cervantez v. Sullivan,* 719 F. Supp. 899 (E.D. Cal. 1989), also reversed on appeal in *Cervantez v. Sullivan,* 963 F.2d 229 (9th Cir. 1992).

By adopting a medical assistance benefits plan pursuant to 42 U.S.C. §1396a(a)(17)(B), the Kansas Medicaid plan must take "into account *only such income and resources as are,* as determined in accordance with standards prescribed by the Secretary, *available to the applicant or recipient,"* in determining Medicaid eligibility or the extent of benefits. (Emphasis added.) The Kansas plan must be in conformity with federal guidelines on Medicaid. See *Himes v. Shalala,* 999 F.2d at 686.

Ussery argues for a reduction in his patient liability for the court-ordered maintenance. He does not point to, and we are unable to find, any federal statute or regulation granting an explicit exemption from available income for court-ordered maintenance payments. Ussery's argument, however, is that Kansas may adopt a less-restrictive definition of available income. Yet Ussery points to no Kansas statute or regulation granting the exemption he seeks.

In arguing that there is no deduction from available income for court-ordered support payments such as the maintenance Ussery

was ordered to pay to his former wife, SRS cites the following cases for support: *Himes*, 999 F.2d 684 (limits on extent state's definition of "available income" can differ from federal guidelines); *Peura by and through Herman v. Mala*, 977 F.2d 484 (9th Cir. 1992) (Alaska permitted a deduction for a portion, but not all, of child support payments; a portion of income used to pay court-ordered child support was "available"); *Cervantez v. Sullivan*, 963 F.2d 229 (SSI regulation which disallowed deduction from income for garnished child support payments in computing eligibility level was valid); *Emerson v. Steffen*, 959 F.2d 119 ("available income" for Medicaid eligibility need not be reduced by child support payments); *Clark v. Commissioner*, 209 Conn. 390, 551 A.2d 729 (1988) ("available income" for determining eligibility level included amount nursing home resident was ordered to pay his at-home spouse as separate maintenance where there was no divorce sought); *Crider v. State, DHRS*, 555 So. 2d 408 (Fla. Dist. App. 1989) ("available income" for Medicaid eligibility included support ordered paid to spouse under temporary court order); *Clark v. Iowa Department of Human Services*, 513 N.W.2d 710 (Iowa 1994) ("available income" for eligibility purposes determined as of its receipt, not after reduction by spousal support payments; acknowledged purpose of the separate maintenance was to reduce income below the eligibility limit); *Estate of G.E. v. Div. of Med. Assist.*, 271 N.J. Super. 229, 638 A.2d 833 (1994) (inclusion as "available income" for Medicaid eligibility the portion of husband's pension that a QDRO ordered directly paid to the wife was valid).

These cases primarily relate to Medicaid eligibility, rather than to determining the level of benefits or the amount of patient liability. That distinction is irrelevant for our purposes. A state could adopt one income methodology for determining eligibility and another for determining the extent of benefits (as long as both methodologies were within the overall limits of the federal scheme if the state wanted to receive full federal participation).

Because Ussery concedes that the Secretary of Health and Human Services and the federal guidelines grant no exemption from available income for court-ordered maintenance payments, the next question becomes whether Kansas has adopted a less restric-

tive definition of available income which does grant a deduction for such payments. The cases from other jurisdictions cited above by SRS provide no insight into what the Kansas regulations permit.

K.A.R. 30-6-106(m)(2) (1993 Supp.) provides in pertinent part as follows:

"(m) When one spouse enters an institutional living arrangement and the other spouse remains in the community, and an application for medical assistance is made on behalf of the institutionalized spouse, the following provisions apply:

. . . .

(2) A monthly income allowance for the community spouse shall be deducted from the income of the institutionalized spouse in determining the amount of patient liability for persons in institutional living arrangements . . . . The income allowance for the community spouse, when added to the income already available to that spouse, shall not exceed 150 percent of the official federal poverty income guideline for two persons plus the amount of any excess shelter allowance. . . . The maximum monthly income allowance which can be provided under this provision shall be $1,769.00. The $1,769.00 limitation shall be increased annually to reflect the percentage increase in the consumer price index for all urban consumers. If a greater income allowance is provided under a court order of support or through the fair hearing process, that amount shall be used in place of the above limits."

See also KPAM § 5754.2(1) concerning the community spouse income allowance.

The term "community spouse" is not defined. However, KPAM § 5754 indicates that spousal impoverishment provisions relate to a "married couple." The term "spouse" must be given its common meaning. "Spouse" means one's husband or wife. Black's Law Dictionary 1402 (6th ed. 1990). "Husband" means a married man who has a lawful wife, and "wife" means "[a] woman united to a man by marriage; a woman who has a husband living *and undivorced.*" (Emphasis added.) Black's Law Dictionary 741, 1598 (6th ed. 1990). It is undisputed that William and Ruby Ussery were divorced; therefore, Ruby is not William Ussery's "community spouse."

While K.A.R. 30-6-106(m)(2) (1993 Supp.) provides an income allowance for a community spouse, it does not provide an allowance for a former spouse. In its opinion, the district court here stated:

"The Administrative Law Judge [ALJ] rendered a decision dated August 11, 1993, that concluded that ·K.A.R. 30-6-106(m)(2) defines available income such that income ordered to be paid for spouses is not considered available income, however income ordered by a Court to be paid to an ex-wife is still available income for the Appellant." ˙ ˙

The ALJ's decision is not included in the record on appeal, so this court cannot know the ALJ's reasoning. The ALJ's conclusion, however, is supported by the plain language of the regulation. An ex-wife is not a "community spouse"; therefore, K.A.R. 30-6-106(m)(2) (1993 Supp.) provides no reduction of available income for court-ordered maintenance paid to an ex-wife.

While the courts of this state need not always accept an administrative agency's interpretation of its own regulations, it has long been recognized that in order to insure effectiveness and uniformity an agency's interpretation of its regulations will be given great weight and, in some cases, controlling weight. *Hickey v. Kansas Corporation Comm'n*, 244 Kan. 71, 76, 765 P.2d 1108 (1988). It is a fundamental rule of statutory construction that when a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed rather than ·determine what the law should or should not be. *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). This same rule of construction should apply to construing regulations, including the regulation at issue here.

The plain language of K.A.R. 30-6-106(m)(2) (1993 Supp.) grants an allowance only to a "community spouse." It grants no similar allowance to an ex-spouse, nor does any other provision grant a similar allowance to an ex-spouse.

Ussery has not shown that SRS erroneously interpreted or applied the law in denying him an allowance for the court-ordered maintenance payments to be made to his ex-wife. The district court erred in so holding.

Ussery does urge this court to find that K.A.R. 30-6-106(m)(2) (1993 Supp.) is violative of equal protection principles if it is construed to provide an allowance for a current spouse but not for an ex-spouse. As stated earlier, the district court did not reach this issue, and the Court of Appeals issued an order striking the argu-

ment from appellate consideration. This court will not address the argument as it was not considered by the trial court.

The trial court erred in holding that Ussery was entitled to a reduction in his patient liability calculation based on the court-ordered maintenance to be paid to his ex-wife. The trial court may consider Ussery's equal protection argument since it was not briefed and argued at the appellate level through no fault of the parties.

Reversed and remanded.