2004 SD 10

**Ervin MULDER, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, Appellee.**

**No. 22731.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Jan. 28, 2004.

Rehearing Denied March 5, 2004.

Kathlene M. Groth, Sioux Falls, SD, for appellant.

Lawrence E. Long, Attorney General, Kirsten Jasper, Assistant Attorney General, Pierre, SD, for appellee.

SABERS, Justice.

[¶ 1.] The Department of Social Services (DSS) issued a final decision upholding its calculation of Ervin Mulder's "available" income for determining his long term care benefits under Medicaid. The circuit court affirmed and Mulder appeals, arguing that his available income should not include the amount he pays for alimony and that the determination is an arbitrary and capricious interpretation of Medicaid. We reverse.

## FACTS

[¶ 2.] Mulder entered a long term care facility in August 2001. He applied to DSS for long term care assistance through Medicaid. Mulder's monthly income is the $701.00 he receives in Social Security benefits. From the $701.00, $50.00 is automatically withheld by Social Security to pay his Medicare premium. Thereafter, $651.00 is direct-deposited into his account each month. Apparently, the Department reimburses Mulder for the $50 taken out to pay his premium. Pursuant to a 1995 final judgment and decree of divorce, $180.00 is simultaneously withdrawn from his account and electronically transferred to his ex-wife's account. Mulder is entitled to a deduction from his counted income of $30 per month to cover his personal needs. ARSD 67:46:06:05. This leaves Mulder with $521 actually available to him each month. Taking his allowed deduction of $30 into account, Mulder has $491 actually available to him to pay to his long term care provider. In December 2001, DSS informed Mulder that he was eligible for assistance in the amount of $322.00 per month. This amount left Mulder responsible for paying his care facility $671.00 per month; $150 more per month than Mulder actually has available to him.[1]

[¶ 3.] Mulder's son and daughter testified that their parents agreed that their mother would receive $180.00 per month out of his Social Security income when they divorced because their mother had qualified for less Social Security income. Mulder and his ex-wife considered the payments to be part of the marital property division. However, the amount was denominated "alimony" in the divorce decree.[2]

---

1. If the $30 personal care deduction is included, he is short $180 and he is effectively denied his personal care deduction as it must be used to pay the cost of care.

2. There was no option but to denominate the attempted equalization "alimony." 42 USC § 407(a) of the Social Security Act provides:

[¶ 4.] The Medicaid long term care program requires that the recipient use all of his or her "available income" to pay toward their care. The Medicaid program then covers whatever the recipient cannot pay. In determining how much a recipient must contribute, DSS considers the amount deducted or paid for alimony to be "available income." Therefore, taking all of the deductions into account, Mulder was found responsible for $671.00 per month. Because this amount is more than Mulder actually has available to him every month, his daughter, acting on his behalf, requested a fair hearing. DSS upheld its initial determination of income and Mulder appealed to the circuit court. The circuit court affirmed DSS and Mulder appeals:

> Whether the Department was arbitrary and capricious in determining that the alimony deducted from Mulder's Social Security retirement benefit was available income.

## STANDARD OF REVIEW

[¶ 5.] SDCL 1–26–36 provides our standard of review for administrative appeals. We review agency decisions in the same manner as the circuit court and the decision of the agency will be upheld

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

This provision has been interpreted to indicate that a settlement agreement dividing social security benefits as marital property is void. See e.g., *Marriage of Hulstrom*, 342 Ill.App.3d 262, 276 Ill.Dec. 730, 794 N.E.2d 980, 985 (2003); *Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231 (1997); *Boulter v. Boulter*, 113 Nev. 74, 930 P.2d 112 (1997). However, in 42 USC 659(a), Congress created an exception to the anti-alienation provision:

unless it is clearly erroneous in light of the entire record. *Sopko v. C.R. Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (additional citations omitted). When faced with an agency's interpretation of a statute that it administers, "so long as the agency's interpretation is a reasonable one, it must be upheld." *Emerson v. Steffen*, 959 F.2d 119, 121 (8th Cir.1992) (citing *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The Supreme Court has held that the Court must inquire first, whether Congress has spoken on the issue at hand and second, whether the agency's interpretation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d at 703. The federal statute in question delegates the power to determine the availability standards to the Secretary of the United States Department of Health and Human Services. Therefore, to the extent that this Court interprets the federal Medicaid statute, the federal agency's determination will not be disturbed unless it is "arbitrary, capricious, or an abuse of discretion." *Id.*

[¶ 6.] **1. Whether the Department was arbitrary and capricious in determining that the alimony deduct-**

> Notwithstanding any other provision of law (including section 407 of this title[ ]), [ ] moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States [ ] (including any agency, subdivision, or instrumentality thereof), to any individual, [ ] shall be subject [ ]to any other legal process brought[ ] by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide [ ] alimony.

Therefore, social security benefits may be taken for payment of alimony but may not be part of a marital property division.

ed from **Mulder's Social Security retirement benefit was available income.**

[¶ 7.] The United States Congress enacted Title XIX (Medicaid) of the Social Security Act in 1965. *See* 42 USCA § 1396a. Medicaid is a cooperative State and Federal program designed to provide health care to needy individuals. States are not required to take part in the Medicaid program, but if they do, they must develop a State plan that complies with the Federal Medicaid act and its regulations. South Dakota chose to participate in the Medicaid program through SDCL 28–6–1. The Medicaid act allows the State the option of developing its own methodology for determining income eligibility, but requires that the methodology be "no more restrictive than the methodology . . . under the Supplemental Security Income [SSI] program under Title XVI." 42 USCA § 1396a(r)(2)(A) and (B). Our Legislature has charged the Secretary of the Department of Social Services (Secretary) with the responsibility of promulgating rules to determine eligibility and the extent of benefits available to applicants. SDCL 28–6–1 and 28–6–3.1. In accordance with these statutory charges, the Secretary has created rules to determine Medicaid eligibility in ARSD Title 67, Article 46.

[¶ 8.] It is undisputed that Mulder is eligible to receive Medicaid long term care benefits. The only question in this case is how much Mulder is entitled to receive. The relevant portions of the federal Medicaid statute provide in part that a state plan for medical assistance must: "include reasonable standards [ ] for determining eligibility for and the extent of medical assistance under this plan which [ ] provide for taking into account only such income and resources as are [ ] avail-

able to the applicant or recipient[.]" 42 USC 1396a (a)(17). The provisions also require that the State "provide for reasonable evaluation of any such income or resources[.]" 42 USC 1396a (a)(17).

[¶ 9.] Since neither our state statutes nor the Department's Medicaid regulations define "available income" [3] and since alimony is not specifically excluded from income in the regulations, the Department relied on ARSD 67:46:03:24 and turned to the federal statute and regulations to determine whether alimony was includable as income for purposes of determining the extent of benefits. ARSD 67:46:03:24 provides:

> In the absence of specific regulations on income and resource requirements for long-term care assistance not otherwise defined in chapters 67:16:01 to 67:16:16, inclusive, eligibility decisions shall be based on the SSI requirements in 42 U.S.C. 1382 to 1383[.]

The federal regulations indicate that alimony is considered income available to the payer under the federal SSI statute in determining eligibility. Relying on ARSD 67:46:03:24, the Department used the federal Medicaid regulations as a basis to deny benefits. However, the Department misreads ARSD 67:46:03:24. First, the regulation refers specifically to the eligibility determination and does not refer to the benefit determination. Second, the regulation is labeled, "Absence of Regulations Regarding Conditions of *Eligibility*." (Emphasis supplied.) Finally, this rule is placed under the chapter of the rules entitled, "Long Term Care *Eligibility*." (Emphasis supplied.) Despite the plain language of this regulation, the Department argues that the same determinations made for purposes of eligibility also apply in

3. The state regulations provide general criteria for determining income for purposes of

calculating the extent of benefits. Those regulations are discussed below.

determining benefits. The regulations taken as a whole make a clear distinction between these two determinations.

[¶ 10.] ARSD 67:46:06:01 provides:

Rules contained in this chapter [4] are applied *after* financial *eligibility is established* according to chapter 67:46:04 and are used to determine the amount of long-term care assistance an individual is eligible to receive from the department.

(Emphasis Supplied). This rule, coupled the clear reference to eligibility in ARSD 67:46:03:24 makes clear that there is a distinction between the Department's determination of income and the extent of benefits. ARSD 67:46:06:03 goes further and provides the specific rules the Department is required to follow in determining benefits:

For purpose of determining the amount of long term care assistance, income is considered according to subdivisions 67:46:04:03(1) to (5), inclusive; §§ 67:46:04:04 to 67:46:04:06, inclusive; and §§ 67:46:04:08 to 67:46:04:10, inclusive.

It is significant that ARSD 67:46:03:24 (the use of federal law to determine income for purpose of eligibility) is not included. In short, there is no authority within the regulations for the Departments reference to the SSI requirements of 42 USC 1382 to 1383.

[¶ 11.] To the extent the Department insists it must use the same calculations to determine benefits as it does to determine eligibility, its interpretation is unreasonable and cannot be upheld. The Department is bound by its own rules and the State Legislature's implementing statutes for determination of recipient's benefits. Therefore, the Department acted arbitrarily and capriciously in referring to the federal statutes and regulations for its determination of the extent of Mulder's benefits.

[¶ 12.] Mulder argues that DSS' interpretation is arbitrary, capricious and unreasonable because it defers to the SSI program which is a cash assistance program. Mulder points out the differences between the programs. Specifically, SSI is a federally funded and administered cash assistance program which is intended to pay for daily living requirements. He argues that although it may be reasonable to include support payments in determining eligibility for SSI, it is not reasonable for determining the amount a patient must pay under the state long term care provisions. We agree. Use of the federal SSI regulations in this case prevented DSS from making a reasonable determination of the recipient's income as required by our state guidelines.[5] The purpose of the long term care benefit is to cover the costs a recipient cannot afford so that the recipient will not be denied long term care. By referring to the SSI regulations, DSS did

---

4. In the administrative code, the first number signifies the title, the second number signifies the article, and the third number signifies the chapter. By referring to "this chapter," this administrative rule refers to ARSD 67:46:06:01 through 67:46:06:11.

5. We acknowledge that federal courts and the Federal Social Security Administration have come to the conclusion that alimony may be considered available income to the payer under the SSI statute. We are not bound by those decisions. First, the Department chose

to promulgate its own rules regarding the extent of benefits rather than adopting the SSI requirements as it did under the eligibility determination. Therefore, we interpret our state regulations and statutes rather than federal regulations and statutes. Second, the Medicaid statute merely provides that the State program be no more restrictive in its requirements than the SSI program. There is nothing in the statute to preclude a less restrictive state program.

not recognize that Mulder was effectively denied access to long term care by its income determination. This result is unreasonable in light of the state regulations DSS is required to follow.

[¶ 13.] The state Medicaid administrative rules require the Department to pay the long term care facility "for amounts not covered by an individual's own income or other state or federal assistance programs." ARSD 67:46:06:04. Income is "any money or in-kind payment before deductions" unless the money or in-kind payment is specifically excluded. ARSD 67:46:04:02(2). The only *listed* exclusions from income for the purpose of determining benefits are:

(1) Third-party payments to medical providers;

(2) County welfare payments to medical providers;

(3) Money paid by a school district for educational purposes;

(4) Income tax or sales tax refunds;

(5) Unearned irregular income from all sources which totals $20 or less per month[.]

ARSD 67:46:04:03; ARSD 67:46:06:03. The federal Medicaid statute requires that the state plans take into account only "available income" and that the state provide for "reasonable evaluation of any such income[.]" 42 USCA 1396a(17)(B) and (C). SDCL 28–6–18 provides in part:

The department shall adopt *reasonable and necessary rules*, pursuant to chapter 1–26, relating to:

(1) The determination of exempt and nonexempt income in long-term care;

(2) The treatment of income in long-term care;

(6) Such other standards and requirements as may be necessary for federal financial participation in accordance with Title XIX of the federal Social Security Act, as amended on January 1, 1989.

[¶ 14.] These statutes and administrative rules clearly indicate that Mulder was entitled to a *reasonable* evaluation of his income. The Department is required to provide benefits to the extent Mulder cannot afford to pay. Mulder will never be able to pay the alimony and pay his share of his medical expenses. Therefore, the Department's determination that Mulder's alimony payments constitute "available income" was not reasonable.

[¶ 15.] Evidence of the unreasonableness of the Department's determination is found in the Department's own arguments. The Department points out that SSI payments are unearned income "at the earliest point when they are received or credited to the applicant's account." 20 CFR 416.1121, 1123. The Department therefore concludes that his available income is the $701 which is deposited by the SSA. The Department then reasons that since "alimony is not taken out before it is deposited into his account" it must be included in his available income. In other words, if Mulder could arrange it so that the alimony is taken out of his social security check before it hits his account, according to the Department, it would not be considered income. This distinction ignores that under either scenario, the money belongs to his ex-wife and is in no way available to him for the payment of his own support.

[¶ 16.] The results of the Department's interpretation of the statute through these rules are inconsistent with common sense and reasonable evaluation of Mulder's available income. Further, they fail to give due deference to the judgment and decree of divorce and the right of Mulder's ex-wife to effective judicial review before

modification of her alimony award.[6]

[¶ 17.] We cannot accept the Department's determination that the $180 per month Mulder pays in alimony is "available" to him. The result of the Department's decision is to make Medicaid unavailable to Mulder despite the fact that he is eligible for benefits under the program. Obviously, his long term care facility cannot continue to room, board and care for him if it is not receiving full payment. The Department is bound by its own regulation requiring it to pay the long term care facility for "amounts not covered by an individual's own income." ARSD 67:46:06:04. Regardless of how the Department defines "income," it has failed to pay the facility for amounts not covered by Mulder.

[¶ 18.] The benefits the Department purports to grant Mulder are of little value to him if he cannot pay his share of the cost of care. By taking away with one hand what it professes to give him with the other, the Department falls short of the statutory mandate that it "provide for reasonable evaluation of [Mulder's] income." 42 USC 1396a(17)(C). This case is distinguishable from those wherein couples attempted to protect themselves from falling into one of the "Medicaid Gaps" by divorcing and giving the vast majority of the assets to the non-institutionalized spouse. *See* e.g., *Ussery v. Kansas Dept. of Social and Rehabilitation Services*, 258 Kan. 187, 899 P.2d 461 (1995); *Clark v. Iowa Dept. of Human Services*, 513 N.W.2d 710 (Iowa 1994). Therefore, the Department's concern for protecting Medicaid funds is less persuasive. The Department can protect Medicaid resources from those who attempt to improperly divert assets which could be used to pay for their care and still reasonably evaluate available income.

[¶ 19.] We reverse.

[¶ 20.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶ 21.] KONENKAMP and ZINTER, Justices, dissent.

ZINTER, Justice (dissenting).

[¶ 22.] I concur that, as drafted, the state administrative regulations determining the *extent* of benefits failed to incorporate ARSD 67:46:03:24 (which further incorporated the federal SSI regulations that explicitly include alimony payments as "available income"). Consequently, DSS erred as a matter of law in *using ARSD 67:46:03:24* to include Mulder's alimony as "available income." *See supra* ¶¶ 9–10.

[¶ 23.] However, in determining Mulder's support benefit, DSS's other rules include the entire Social Security benefit as available income *without deduction*. As the Court points out, ARSD 67:46:06:01 provides that the rules in ARSD chapter 67:46:06 are used to determine the amount of assistance. *Supra* ¶ 10. One of those rules, ARSD 67:46:06:02, provides that the terms used in that chapter have the same meaning as those defined in ARSD 67:46:04:02. That later regulation broadly captures all sources of income "before deductions." ARSD 67:46:04:02.[7] Moreover, alimony payments are not on the list of

---

6. Also disturbing is the fact that if Mulder is somehow able to keep his long term care *and* pay the alimony, DSS will count the alimony as income to the former Mrs. Mulder should she apply for Medicaid benefits. In other words, it is charged as income to both the payor and the payee.

7. " 'Income,' unless specifically excluded in § 67:46:04:03, [includes] any money or in-kind payments *before deductions* [.]" ARSD 67:46:04:02(2) (emphasis added).

exclusions. *See* ARSD 67:46:04:03.[8] Finally, DSS was under no obligation to adopt a specific regulation granting a deduction for court-ordered support payments. Similar inclusions of support have been affirmed simply upon *a state administrative official's determination* after *consultation* with federal authorities. *Peura v. Mala,* 977 F.2d 484, 486 (9thCir.1992) (affirming inclusion and noting that the "state administrators so concluded after consulting with the United States Department of Health and Human Services. Under this determination, Medicaid now pays significantly less to the Island View Manor nursing home, the institution where Peura resides"). Therefore, DSS properly determined. that Mulder's Social Security benefit was a source of income and was available to him before he made his electronic deduction to pay his alimony. For this reason, DSS could consider Mulder's entire $671 [9] Social Security benefit as "available income."

[¶ 24.] Mulder, however, argues that DSS's failure to grant a support deduction violates 42 USC § 1396a(17),[10] which requires that state medical assistance plans include "reasonable" standards for determining eligibility and the extent of benefits. This Court also contends that DSS's refusal to grant an alimony deduction was arbitrary, capricious, and unreasonable. I disagree.

[¶ 25.] It is now uniformly established that states may include spousal and child support payments as "available income" even though the inclusion adversely affects a recipient's entitlement. As this Court itself notes, the "federal courts and the Federal Social Security Administration have come to the conclusion that alimony may be considered available income to the payer under the SSI statute." *Supra* n. 5. *See also Emerson,* 959 F.2d at 124; *Cervantez v. Sullivan,* 963 F.2d 229, 234 (9thCir.1992).

[¶ 26.] The courts that have considered the question agree that it is reasonable because a state is only prohibited from adopting rules that are more restrictive than the federal guidelines. 42 USC § 1396a(r)(2)(A). Therefore, because federal regulations permit inclusion of court-ordered support as available income, the

8. ARSD 67:46:04:03 provides:

   The following are not considered income when determining eligibility for long-term care or medical assistance:

   (1) Third-party payments to medical providers;

   (2) County welfare payments to medical providers;

   (3) Money paid by a school district for educational purposes;

   (4) Income tax or sales tax refunds;

   (5) Unearned irregular income from all sources which totals $20 or less per month;

   (6) Veteran's aid and attendance benefits;

   (7) Life insurance dividends;

   (8) Any benefits received under the provisions of the Older Americans Act of 1965, except wages or salary; and

   (9) Payments to volunteers under the Domestic Volunteer Service Act of 1973, such as from SCORE, VISTA, or the foster grandparent program.

9. This is Mulder's "available income" from his Social Security benefit after undisputed adjustments, but without a deduction for his $180 alimony payment.

10. 42 USC § 1396a(17) states in relevant part:

   (a) Contents. A State plan for medical assistance must—

   (17) ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ...

   (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would not be disregarded ... in determining his eligibility for such aid, assistance, or benefits[.]

state may also include it as "available income." "[T]he Secretary's policy of including [analytically identical] child-support payments when determining available income is based on a permissible construction of the statute." *Emerson*, 959 F.2d at 122. Therefore, it is "reasonable."[11]  *Id.* In justifying its conclusion, the Eighth Circuit noted, "income which has been paid out in . . . support cannot later be 'used' or 'availed of' to pay another bill, but neither can income which has been paid out for groceries.  Although maybe different in kind, the two are both obligations of the person making the payments." *Id.* at 121–22.

[¶ 27.]   The Eighth Circuit Court of Appeals is not alone in concluding that money used for support payments may be counted as "available income" of the payer. *See, e.g., Tarin v. Comm'r of the Div. of Med. Assistance*, 424 Mass. 743, 678 N.E.2d 146 (1997) (money used to pay child support is "available" to Medicaid recipient); *Ussery*, 258 Kan. 187, 899 P.2d 461 (1995) (upholding inclusion of court ordered spousal support payments in Medicaid recipient's

"available income"); *Himes v. Shalala*, 999 F.2d 684, 689 (2dCir.1993) (interpretation that money used to pay child support is available was reasonable and should be accorded deference); *Peura*, 977 F.2d at 491 (9thCir.1992); *Cervantez*, 963 F.2d 229 (decision to include garnished amounts for child support as unearned income is a reasonable interpretation of the SSI statutory language).

[¶ 28.]   Mulder, however, argues that his case is distinguishable because some of the foregoing cases "involve eligibility[12] for Medicaid assistance in general, as opposed to Medicaid assistance for long term care."   However, Mulder's position has been rejected:

> [T]he United States Court of Appeals for the Ninth Circuit concluded that it was "of little import" that the Secretary's determination regarding [that recipient's] child support obligations came "in the context of a post-eligibility determination."   . . . [T]he court in *Peura* noted that 42 USC § 1396a(a)(17) concerns both applicants for and recipients of Medicaid and "its restrictions apply to

---

11.  Under the relevant SSI requirements, court-ordered alimony is also included as available income.  20 CFR § 416.1123(b)(2). "It has been longstanding SSI policy that amounts withheld from earned and unearned income for payment of a debt or other legal obligation are included in income for purposes of determining eligibility and payment amount under the SSI program."  Supplementary Security Income for the Aged, Blind, and Disabled; How We Count Earned and Unearned Income; Funds Used to Pay Indebtedness, 56 Fed. Reg. 3209, 3211 (Jan. 29, 1991) (to be codified at 20 CFR pt. 416).  In response to a comment which drew a distinction between court-ordered support obligations and other legal debts, the agency remarked:

> While we do not disagree that there are distinctions between a debtor/creditor relationship and the obligation to pay alimony, the overall result, we believe, is basically the same; i.e., the payer benefits financially

from the satisfaction of the debt/obligation. It is not the purpose of the SSI program to subsidize any types of indebtedness whether that indebtedness results from a debtor/creditor relationship or from an obligation imposed by public policy.

12.  The federal SSI regulations have their origin in Title XIX of the Social Security Act. That Act clearly provides that, when determining the *amount of assistance* ("the *extent* of . . . assistance") a State plan may take into account only such income "as [is] determined in *accordance with* standards prescribed by the Secretary [Secretary of the Department of Health and Human Services]" that: (1) is "available to the applicant" and that (2) "would not be disregarded . . . in determining . . . *eligibility*."  42 U.S.C. § 1396a(17) (emphasis added).  Therefore, it is not *per se* unreasonable to determine the *extent* of benefits, by use of federal law on *eligibility*.

both eligibility determinations and post-eligibility determinations regarding the extent of assistance."

*Tarin,* 678 N.E.2d at 153 & n. 17 (citing *Peura,* 977 F.2d at 487 n. 4; *Ussery,* 899 P.2d at 461, 465 (upholding the inclusion of court-ordered spousal support payments in a Medicaid recipient's "available" income when establishing benefit levels)).

These cases primarily relate to Medicaid eligibility, rather than to determining the level of benefits or the amount of patient liability. That distinction is irrelevant for our purposes. A state could adopt one income methodology for determining eligibility and another for determining the extent of benefits (as long as both methodologies were within the overall limits of the federal scheme if the state wanted to receive full federal participation).

*Ussery,* 899 P.2d at 465. Thus, the uniform case law on this question makes the distinction between eligibility and the extent of benefits irrelevant.

[¶ 29.] The Court and Mulder also believe that inclusion of support payments as available income is unreasonable "because Mulder [would be] *effectively denied access* to long-term care by its income determination." *Supra* ¶ 12 (emphasis added); *see also supra* ¶¶ 13–18. I disagree.

[¶ 30.] First, it is at best speculative to surmise that Mulder would be *effectively* denied *access* to long-term care simply because DSS has agreed that Mulder is eligible to receive all but the $180 at issue. It must be remembered that the maximum payment for assisted-living is $993 per month. Therefore, under the Court's "denial of access" logic, other recipients, whose actual long-term care costs exceed

this maximum benefit by $180, would also be "denied access" to long-term care. So also, any eligible recipients whose monthly income is $180 less than their actual long-term care costs, would also be "effectively denied access" to care. This logic suggests the untenable result that DSS may never limit long-term care benefits by $180 more than the recipient can afford. Such a result is in contravention of the federal law that expressly permits the inclusion of support payments as available income.

[¶ 31.] More importantly, the Court's "denial of access" rationale wholly fails to consider that Mulder's daughter, guardian and petitioner herein, has the legal obligation to provide the $180 for his support if he is unable. In this jurisdiction, "[a]ny adult child, having the financial ability to do so, shall provide necessary food, clothing, shelter, or medical attendance for a parent who is unable to provide for oneself...." SDCL 25–7–27. Because Mulder's daughter has not claimed financial inability, she has the legal obligation to pay the nursing home for the $180 in long-term care medical assistance not provided by Medicare.[13] *Americana Healthcare Ctr., a Div. of Manor Healthcare Corp. v. Randall,* 513 N.W.2d 566 (S.D.1994).

[¶ 32.] The Court's "denial of access" rationale also ignores the fact that spousal support is based upon ability to pay. *See Dejong v. Dejong,* 2003 SD 77, ¶ 7, 666 N.W.2d 464, 467. If Mulder is unable to pay for his own basic care and his court ordered spousal support, his remedy is to reduce his alimony obligation. *See, e.g., Peura,* 977 F.2d at 490 n. 7 (noting that Peura had available to him the option of returning to state court to seek a reduction of his support obligation).

---

**13.** It is also significant that daughter's payment of the $180 would not render Mulder ineligible for assistance. ARSD 67:46:04:03(1) provides that third-party payments to medical providers are not considered income when determining eligibility for long-term care.

[¶ 33.] Finally, it must be remembered that even though Mulder may not exclude the $180, the requirement is reasonable because he receives a financial benefit "from the discharge of the indebtedness." *Cervantez*, 963 F.2d at 234; *Emerson*, 959 F.2d at 123 n. 3. As the federal courts have noted, inclusion of support payments is reasonable because of the competing needs of the destitute and the preservation of fiscal solvency of programs attempting to protect their coffers from payment of a recipient's other legal obligations. *Cervantez*, 963 F.2d at 235.

[¶ 34.] In conclusion, we have not been cited to any authority holding the inclusion of support payments arbitrary, capricious or unreasonable. On the contrary, all relevant authority holds that absent an express state deduction, spousal and child support obligations are "available income." Consequently, DSS's decision was reasonable and comported with federal law. I would affirm the hearing examiner and the circuit court.

[¶ 35.] KONENKAMP, Justice, joins this dissent.