#24444-a-RWS

**2007 SD 106**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TILLIE TUCEK,                                        Appellant,

v.

SOUTH DAKOTA DEPARTMENT
OF SOCIAL SERVICES,                              Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN W. ENG
Judge

\* \* \* \*

DOUGLAS R. KETTERING of
Kettering Law Office
Yankton, South Dakota                           Attorney for appellant.

LAWRENCE E. LONG
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Legal Division
Department of Social Services
Pierre, South Dakota                            Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED **10/17/07**

#24444

SABERS, Justice.

[¶1.]     After the Department of Social Services (DSS) sent Tillie Tucek a notice that her long-term care benefits under Medicaid would be terminated, Tucek applied for a hearing.  The administrative law judge (ALJ) initially found in favor of Tucek in a pending decision, but later found in favor of the Department.  The circuit court affirmed the termination of Tucek's long-term care benefits.  Tucek appeals.  We affirm.

**FACTS**

[¶2.]     In 1995 and 1996, Tucek purchased five annuities from Lee Skalberg, an agent for Conseco Annuity Assurance Company (Conseco).  She paid $10,000 each for the first four annuities in 1995 and $40,000 for the fifth annuity in 1996.  The chosen settlement option of the annuities was for "life or twenty years certain."  Tucek was to receive payments for her life; or if she were to die within twenty years of purchasing the annuities, her chosen beneficiary would receive the payments for the remainder of the twenty years.

[¶3.]     Tucek went to live in a nursing home in September of 1999.  For the next three years, Tucek paid for her own nursing care costs.

[¶4.]     In 2002, the five annuities were rolled into a structured settlement, entitled Contract #SS976057.[1]  Tucek alleged she had no control over the settlement option and the company, of its own accord, rolled all the annuities into the structured settlement.  Once the annuities had been combined, Tucek claimed

---

1.     It is sometimes referred to as #55976057.

the original five annuities were surrendered to Conseco and were no longer in Tucek's possession, or in the possession of her daughter, as her power of attorney, or the insurance agent.

[¶5.]        In February of 2003, she applied for long-term care assistance through DSS.  As a part of the application, Tucek listed all assets, including the annuities.  The DSS verification form reflected the 1995 annuities and did not show the 2002 consolidation.  Tucek was over the resource limit due to her interest in a life estate, so her application was rejected.  She sold her interest in the life estate and reapplied for assistance in March of 2003.  This application was granted and Tucek began receiving long-term care assistance through DSS.

[¶6.]        In 2004, Tucek's case was chosen to be reviewed by DSS personnel as part of its quality control review process.  During this review, DSS discovered that the original annuities were rolled into the 2002 structured settlement.  Finding that the annuity was an available resource, which placed Tucek over the resource limit, DSS sent her notice that her assistance would end March 2005.  She requested an administrative hearing, which was held August 1, 2005.

[¶7.]        At the hearing, despite a subpoena for the contracts, neither the original annuity contracts nor the contract for the structured settlement were in evidence.  Instead, the insurance broker Skalberg testified that all the annuity contracts were the same, Tucek had no control over the settlement option, and the decision to roll the annuities into the structured settlement was arrived at by the

company based on the settlement options in the original five annuities.[2]  Skalberg and Lillian Schlechter, Tucek's daughter and power of attorney, testified that neither the structured settlement nor the original annuities could be cashed, sold or borrowed against because they only guarantee a stream of payments during her life.

[¶8.]     As the hearing on August 1 ended, the ALJ stated that "we may have another hearing or I may have a telephone conference to get more information or more documents."  However, the ALJ issued a pending decision on August 4, 2005, which found in favor of Tucek.  DSS moved to reopen the hearing for additional evidence and for additional time to obtain copies of the annuity contracts from Conseco.  Despite Tucek's resistance, the ALJ granted the motion and ordered the matter stayed for 90 days.

[¶9.]     A second hearing was held February 16, 2006.  Again, the attempts to obtain the annuity contracts failed.  Conseco supplied a specimen contract to Tucek, who then gave it to DSS.  It was admitted into evidence, over Tucek's objection. After this hearing, the ALJ issued a second pending decision, this time in favor of DSS.

[¶10.]     Tucek objected to the pending decision, but the ALJ issued a final decision on April 4, 2006, adopting the second pending decision.  In this decision, the ALJ found that Skalberg's testimony was incorrect.  It noted that Skalberg testified that the annuity policies were all the same and annuities could not be cashed, sold, or borrowed against.  Contrary to his testimony, the specimen contract

---

2.     Skalberg did not have the original contracts and testified about the documents from memory.

allowed for a change in ownership, withdrawals and lump sum payments. Other documentation provided demonstrated Tucek participated in the combining of the annuities. This raised a question regarding the terms of Tucek's annuity contracts. The ALJ concluded her contracts were necessary in order to determine whether she was eligible for benefits. Therefore, the ALJ found Tucek did not provide DSS with sufficient information to determine her eligibility for long-term care assistance and that DSS could terminate her long-term care assistance pursuant to ARSD 67:46:03:01.

[¶11.] Tucek appealed to the circuit court, which affirmed the ALJ's decision. Tucek appeals.

> Whether DSS was correct in terminating Tucek's long-term care assistance for failure to provide sufficient evidence of eligibility.

### STANDARD OF REVIEW

[¶12.] In an appeal from a circuit court's review of an administrative agency's decision, "we review the agency's decision unaided by any presumption that the circuit court's decision was correct." Huber v. Dep't of Public Safety, 2006 SD 96, ¶10, 724 NW2d 175, 178 (quoting Meligan v. Dep't of Revenue & Regulation, 2006 SD 26, ¶13, 712 NW2d 12, 17 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465)). "The Department's factual findings and credibility determinations are reviewed under the clearly erroneous standard." Id. (quoting Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶15, 711 NW2d 244, 247 (citing Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83)). "Questions of law are reviewed de novo." Id. "Mixed questions of fact and law are fully reviewable." VanSteenwyk v. Baumgartner Trees & Landscaping, 2007 SD 36, ¶10, 731 NW2d 214, 218 (quoting

Orth v. Stoebner & Permann Const., Inc., 2006 SD 99, ¶27, 724 NW2d 586, 592

(quoting Brown v. Douglas Sch. Dist., 2002 SD 92, ¶9, 650 NW2d 264, 268)).

[¶13.]     The standard of review varies depending on the type of evidence

presented to the agency:

> When findings of fact are made based on live testimony,
> the clearly erroneous standard applies. "Deference and
> great weight are given to the hearing examiner on fact
> questions. 'When factual determinations are made on the
> basis of documentary evidence, however, we review the
> matter de novo, unhampered by the clearly erroneous
> rule.'"

Id. ¶11 (quoting Orth, 2006 SD 99, ¶28, 724 NW2d at 592) (additional and internal

citations omitted).

[¶14.]     **Whether DSS was correct in terminating Tucek's long-term**
**care assistance for failure to provide sufficient evidence of**
**eligibility.**

[¶15.]     To help provide health care to needy individuals, states have the

option of participating in Medicaid under Title XIX of the Social Security Act.

Mulder v. S.D. Dep't of Social Services, 2004 SD 10, ¶7, 675 NW2d 212, 215; see 42

USC 1396a-v, amended by PL 110-90, September 29, 2007, 121 Stat 984. States

choosing to participate must adopt regulations to comply with the act. Mulder,

2004 SD 10, ¶7, 675 NW2d at 215; 42 USC 1396a(a). Long-term care is an optional

category of coverage under Title XIX. 42 USC 1396a(a)(10)(A)(ii)(V).

[¶16.]     South Dakota enacted SDCL 28-6-1 in order to participate in the

Medicaid program. Mulder, 2004 SD 10, ¶7, 675 NW2d at 215. Through various

statutes, the Legislature delegated rule making authority to DSS necessary to

determine eligibility for various services under the federal Social Security Act,

including long-term care assistance. SDCL 28-1-1, SDCL 28-6-1; SDCL 28-6-18.

These regulations are located at ARSD 67:46:01 *et seq.*

[¶17.]    ARSD 67:46:02:03 and 67:46:03:01 place the burden on the applicant

or recipient of long-term care assistance to supply sufficient information to

determine initial and continuing eligibility. ARSD 67:46:02:03 provides:

> Initial and continuing eligibility for long-term care
> assistance shall be determined by the department on the
> basis of statements submitted by the applicant or
> recipient of long-term care assistance about the facts that
> are within the applicant's or recipient's knowledge and
> competence. Verification through contacts is required for
> selected items, including family composition, resources,
> and income.

Additionally, ARSD 67:46:03:01 provides:

> The applicant or recipient of long-term care shall have the
> primary responsibility of furnishing the department
> information necessary to determine eligibility or
> ineligibility for long-term care assistance. Failure of the
> applicant or recipient to furnish the necessary
> information may result in the rejection or termination of
> long-term care assistance.

An applicant or recipient "must take advantage of all income and resources" and

failure to do so "makes the individual ineligible for long-term care services and

medical assistance." ARSD 67:46:05:13. Also, if the individual has more than

$2,000 in resources,[3] they are ineligible for assistance. ARSD 67:46:05:30.

[¶18.]    It is DSS's position that the structured settlement annuity is an

"available resource" or the original annuities were available to Tucek before the

consolidation in 2002 resulting in a period of ineligibility due to the five-year look

---

3.    The resource limit is $3,000 if an individual is married. ARSD 67:46:05:30.

back rule.  SDCL 28-6-3.1; ARSD 67:46:05:09; ARSD 67:46:05:32.[4]  DSS argues that

Tucek has the burden of providing information to demonstrate she is eligible for

assistance.  DSS claims the ALJ did not err when it concluded Tucek's assistance

could be terminated under ARSD 67:46:03:01 because she did not provide enough

information to determine eligibility.  DSS claims Tucek should have produced the

original annuity contracts and the 2002 structured settlement annuity contract in

order to determine her available resources.

[¶19.]     Tucek claims that the ALJ erred when it admitted the specimen

contract over her objection.  She argues that the contract is inadmissible hearsay

and no foundation was provided for its admittance.  Therefore, she claims the

document should have been excluded when she objected.

[¶20.]     The record contains no transcript for the second hearing.  The parties

entered into a stipulation regarding the record for this hearing.  The stipulation

provides that the ALJ "entered his Final Opinion . . . based upon evidence which

included documents which were obtained by Subpoena and relating to annuities

purchased by Tillie Tucek."  Furthermore, the parties agreed the subpoenaed

documents were offered by DSS and were admitted over the objection of Tucek "for

hearsay foundation and other basis to include the fact that the same were not

testified to by officials of the insurance company as to whether or not they applied

to the instant action."

---

4.     ARSD 67:46:05:32 explains that "[i]f an individual . . . or someone . . .
       authorized to act on behalf of the individual . . . has the legal power to
       dissolve the trust or invade the principal and use the proceeds, the principal
                                                            (continued . . .)

[¶21.]     The specimen contract is not hearsay.  It was offered for impeachment or rebuttal rather than "to prove the truth of the matter asserted."  *See* SDCL 19-16-1(3).  The specimen contract was offered to rebut Skalberg's testimony that all of Conseco's annuity policies were the same and that the policies could never be sold, borrowed against or cashed.  Moreover, verbal acts are excluded from the hearsay category "because they are not assertions and not adduced to prove the truth of the matter" but instead "the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."  Mueller v. Abdnor, 972 F2d 931, 937 (8thCir 1992) (quoting FRE 801(c) advisory committee's notes); *see also* 2 John W. Strong *et al.*, McCormick on Evidence, § 249 at 101 (4th ed 1992); 6 John H. Wigmore, Evidence § 1770 at 259 (James H. Chadbourn rev ed 1976).  In *Mueller*, the Eighth Circuit Court of Appeals specifically noted that a contract is a form of verbal act.  In ruling the contract was not hearsay and therefore admissible it explained:

> A contract, for example, is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay.  In particular, evidence of lost profits based on a contract is not subject to the hearsay rule because such evidence concerns the existence of the contractual terms rather than an assertion of their "truth."

972 F2d at 937 (internal citations omitted).

[¶22.]     Tucek argues the specimen contract should have been excluded for lack of foundation.  However, the record does not reflect whether no foundation was

_____

(. . . continued)
of the trust is considered a resource."  An annuity qualifies as a trust.  ARSD 67:46:05:01(13).

actually provided because the hearing transcript is absent from the record. The stipulation as to the record only provides that the document was received over Tucek's hearsay and foundational objections. "If the appellate record is incomplete, this Court presumes that the trial court acted correctly." State v. Corey, 2001 SD 53, ¶8, 624 NW2d 841, 843-44 (citing Baltodano v. N. Cent. Health Services, Inc., 508 NW2d 892, 895 (SD 1993)). Therefore, we presume the ALJ properly admitted the specimen contract.

[¶23.] Finally, Tucek argues that the ALJ did not reconcile ARSD 67:46:03:01 with ARSD 67:46:02:03, which provides:

> Initial and continuing eligibility for long-term care assistance shall be determined by the department on the basis of statements submitted by the applicant or recipient of long-term care assistance about the facts that are within the applicant's or recipient's knowledge and competence. Verification through contacts is required for selected items, including family composition, resources, and income.

Additionally, ARSD 67:46:03:01 gives the applicant or recipient the primary responsibility of furnishing the necessary information in order to determine eligibility. It also provides that failure to meet this burden may result in rejection or termination of assistance. Tucek claims that the contracts were beyond her knowledge and competence.

[¶24.] The State argues that Tucek is in the best position to provide the information to DSS. We agree. The two pages of the annuity contract that Tucek provided indicate Tucek was to place the document "with other valuable documents for future reference." These are Tucek's contracts and the burden is on her to provide the information to determine eligibility. If she no longer had the contracts

or conformed copies, she should have obtained them and provided them. She failed to do so.

[¶25.] Ultimately, the ALJ did not reach a finding that Tucek could access the money and was ineligible for long-term care assistance. Instead, the ALJ found that Tucek failed to provide sufficient evidence to resolve eligibility because she did not provide the actual contracts. These contracts were needed to determine whether Tucek could reach or access the money and exceed the $2,000 resource limitation. Since Tucek did not provide sufficient evidence, DSS was allowed to terminate assistance. *See* ARSD 67:46:03:01.

[¶26.] Affirmed.

[¶27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.