

FILED

Nov 18 2015, 6:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kevin R. Patmore
Patmore Law Office
Santa Claus, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ada Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> Indiana Family and Social Services Administration, <br> *Appellee-Plaintiff* | November 18, 2015 <br><br> Court of Appeals Case No. 87A01-1501-PL-38 <br><br> Appeal from the Warrick Circuit Court <br><br> The Honorable David O. Kelly, Judge <br><br> Trial Court Cause No. 87C01-1303-PL-346 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Ada and Roy Brown transferred their home to a trust in 2000 and shortly thereafter made the trust irrevocable. Ten years later, and two years after Ada moved to a nursing home, the trust sold the home for $75,000. In 2012 Ada applied for Medicaid benefits and submitted documentation that the house had sold for $75,000. The Indiana Family and Social Services Administration ("FSSA") found Ada eligible for Medicaid benefits; however, it imposed a transfer penalty based on the sale of the home in 2010. In calculating the penalty, the FSSA valued the home at $91,900 based on a tax assessment. Ada appealed the imposition of the penalty, the ALJ affirmed, and Ada appealed to this Court. Because the evidence shows that the proceeds from the sale of the house were placed back in the trust, and that the fair market value of the house was $75,000, we reverse the imposition of the transfer penalty. Further, although the FSSA asks us to remand to the agency to redetermine eligibility, we decline to do so as eligibility was never an issue with the FSSA, the ALJ, or the trial court.

# Facts and Procedural History

[2] In March 2000, Ada and Roy Brown executed the Brown Joint Primary Trust ("the Trust"). The following month, the Browns conveyed legal title of their Warrick County residence to the Trust for the sum of $1.00. The Trust became irrevocable when Ada and Roy resigned from their trusteeships in October 2000. Ada and Roy lived in their home until February 2008, when seventy-

nine-year-old Ada moved to a nursing home because she was suffering from dementia. Roy stayed in the home until June 2010, when Ada and Roy's granddaughter purchased it for $75,000.

[3] On July 25, 2012, Ada filed an application for Medicaid benefits. On August 31, 2012, the FSSA sent Ada a form, which explained that additional information was needed to determine her eligibility. Specifically, the form asked Ada to submit a deed, mortgage, or land contract. The comments accompanying the request provided as follows:

> The [W]arrick [C]ounty [A]ssessor site shows the property on 1600 62 E Hwy in Booneville, IN valued at $91,900.00. We showed it sold for $75,000.00. If you disagree with this appraised value then turn in another appraisal to show the home's value. Also, turn in [a] copy of the sales disclosure page, which shows the amount of the gross and net sales and any costs such as closing cost, mortgage, etc for the property on 1600 62 E Hwy in Booneville. If any of the proceed[s] from the sale went to Roy or Ada Brown then turn in verification if they received any proceeds from the sale, when, amount and what happened to the money.

Ex. p. 76.

[4] In response to FSSA's request, Ada submitted the following comments:

> Please find following sales disclosure/closing statement for 1600 62 E in Boonville, [Indiana] owned by irrevocable trust. No appraisal was completed by or for the trust, but the price was reduced due to the need to replace the sewer service. No amount or proceeds from the sale of 1600 62 E was paid to or received by Roy or Ada Brown.

*Id.* at 79. Ada also submitted the following documents: 1) a copy of the Trust; 2) an Indiana Sales Disclosure form from the 2010 sale of the house, which states that the Trust was the seller and the sale price was $75,000; and 3) a settlement statement from the 2010 sale, which provides that the Trust was the seller of the property and that the Trust received $75,000 in cash for the sale of the home.

On September 13, 2012, the FSSA notified Ada that her Medicaid application had been approved and that she was eligible for benefits retroactive to April 1, 2012. The notice also advised her, however, that nursing-facility services would not be covered between April 1, 2012, and August 5, 2013, because FSSA was imposing a transfer penalty due to the 2010 sale of her home.

Brown appealed the imposition of the transfer penalty, and an Administrative Law Judge ("ALJ") held a hearing in December 2012. At the hearing, Ada's attorney and grandson, Kevin Patmore, testified that the $75,000 proceeds from the sale of the house were placed back in the Trust. In support of his testimony, Patmore pointed to the settlement statement from the 2010 sale, which provided that the Trust was the seller of the property and received $75,000 in cash for the sale. Patmore also testified that the fair market value of the home was its sale price, which was the amount the buyer was willing to pay because a new sewer system was required.

Following the hearing, the ALJ sustained the FSSA's determination. Specifically, the ALJ found that:

10.  The community spouse resided in said real estate until the sale on June 10, 2010.  This property sold for $75,000.  Per best available documents from the Warrick County Assessor's records, the property had a value of $91,900.

11.  The State agency contends that the property was sold for less than fair market value.  In addition, the proceeds from the sale of the property are subject to the transfer of property rules.

12. The appellant's Authorized Representative contends that the proceeds from the sale of the property were transferred to the Brown Joint Primary Trust and are not subject to transfer of property rules.

13. No evidence that the proceeds from the sale of the real estate at issue were placed in the Brown Joint Primary Trust was submitted.

14. The transfer of the $75,000 in proceeds from the sale of real estate did occur in the look back period and [is] subject to the rules of property transfer.

Tr. p. 133, 135.  The trial court denied Ada's petition for judicial review and affirmed the agency action in December 2014.  Ada now appeals.

# Discussion and Decision

In an appeal from a decision of an administrative agency, our standard of review is governed by the Administrative Orders and Procedures Act (AOPA). *Austin v. Ind. Family & Soc. Servs. Admin.*, 947 N.E.2d 979, 981 (Ind. Ct. App. 2011).  When reviewing an administrative agency decision, we may neither try

the case de novo nor substitute our judgment for that of the agency. *Id.*
Judicial review of disputed issues of fact must be confined to the agency record
for the challenged action, and we will not reweigh the evidence. *Id.* We defer
to the expertise of the administrative body, and will reverse the agency's
decision only if it is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
>
> (2) contrary to a constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d); *Austin*, 947 N.E.2d at 982. The burden of
demonstrating the invalidity of an agency action is on the party asserting its
invalidity. *Id.*

[11] Before addressing the merits of this case, we provide a relevant legal
background. The Medicaid program, 42 U.S.C. § 1396 et seq. (2001), was
established by Congress in 1965. Its purpose is to provide medical assistance to
needy persons whose income and resources are insufficient to meet the
expenses of health care. *Ind. Family & Soc. Servs. Admin. v. Thrush*, 690 N.E.2d
769, 771 (Ind. Ct. App. 1998), *trans. denied*. The program operates through a
combined scheme of state and federal statutory and regulatory authority. *Id.*
States participating in the Medicaid program must establish reasonable

standards for determining eligibility, including the reasonable evaluation of an applicant's income and resources. *Id.* To qualify for Medicaid, an applicant must meet both an income-eligibility test and a resources-eligibility test. *Id.* If either the applicant's income or the value of the applicant's resources is too high, the applicant does not qualify for Medicaid. *Id.*

[12] If an applicant is found to be eligible, federal law requires the FSSA to "look back" sixty months from the date of the application to determine if any uncompensated or undercompensated transfers of assets were made. *Austin*, 947 N.E.2d at 982. "Assets" is defined broadly and includes all income and resources of the applicant or recipient, and of the applicant's or recipient's spouse. 405 I.A.C. 2-3-1.1(a)(1). A "transfer of assets" is also defined broadly and "includes any cash, liquid asset, or property that is transferred, sold, given away or otherwise disposed of . . . [and] includes any total or partial divesture of control or access." 405 I.A.C. 2-3-1.1(d)(1). If a transfer of assets has occurred within the sixty-month look-back period and that transfer was for less than the fair market value, a transfer penalty is imposed, and an institutionalized individual is ineligible for nursing-facility services during the penalty period. 405 I.A.C. 2-3-1.1(c), (e).

[13] This case also involves an irrevocable trust. For the first two decades of Medicaid, an irrevocable trust was not considered an asset in determining whether an applicant was sufficiently needy to qualify for Medicaid benefits. *Ramey v. Reinertson*, 268 F.3d 955, 958 (10th Cir. 2001). During this time, financial advisors and attorneys advised their clients to shelter their assets in

irrevocable trusts because a trust settlor was able to qualify for public assistance without depleting his assets. *Id.* He could therefore "once more enjoy those assets if he no longer needed public assistance; and, if such a happy time did not come, could let them pass intact pursuant to the terms of the trust to his heirs." *Cohen v. Comm'r of the Div. of Med. Assistance*, 668 N.E.2d 769, 771-772 (Mass. 1996). In other words, the settlor "was able to have his cake and eat it too." *Id.* at 772.

In 1986, Congress closed this "loophole" in the Medicaid act so that assets in certain trusts would be considered in determining whether a Medicaid applicant satisfied the maximum asset requirement. *Boruch v. Neb. Dep't of Health and Human Servs.*, 659 N.W.2d 848, 853 (Neb. Ct. App. 2003). Seven years later, Congress enacted even tighter restrictions, which expanded the types of trusts that could be considered to preclude applicants from Medicaid eligibility. *Id.* The Indiana restrictions, which were adopted in 1995, provide in pertinent part as follows:

> (c) An irrevocable trust established by an applicant or recipient shall be considered as follows:
>
> > (1) If there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus or income from which payment to the individual could be made shall be considered resources available to the individual.
>
> 405 I.A.C. 2-3-22.

[15] Thus, under the plain language of these restrictions, if a person establishes an irrevocable trust with his or her assets and the individual is able, under any circumstances, to benefit from the corpus of the trust or the income derived from the trust, the individual is considered to have formed a trust which is taken into account in the determination of Medicaid eligibility. *See Boruch,* 659 N.E.2d at 853 (interpreting 42 U.S.C. § 1396p(d), the federal counterpart to the Indiana statute). In addition, the corpus of the trust shall be considered resources available to the individual. *Id.*

[16] As FSSA aptly notes in its brief, Medicaid is a rocky terrain and that terrain is even more treacherous when an individual's assets are held in trust. FSSA makes two decisions when deciding the amount of medical assistance an individual receives to meet the expenses of health care. First FSSA determines eligibility based on the available resources of the individual. If a trust is involved, then assets held in trust for the benefit of the individual are included in available resources.[1] Second, if an individual is found eligible for Medicaid benefits, the FSSA may impose a transfer penalty if any uncompensated or under-compensated transfers of assets were made.

---

[1] But there is a long list of ways that an asset is considered unavailable for purposes of eligibility. One such way is by taking advantage of the Community Spouse Resource Allowance. Within 90 days of an eligibility decision, an applicant may transfer property from joint ownership to a spouse individually up to a certain value, in this case $76,227, and those transferred assets will not be considered assets for purposes of eligibility determinations. *See* 42 U.S.C. § 1396r-5.

[17] Here, FSSA found Ada eligible for Medicaid benefits but assessed her a transfer penalty. Both the ALJ and trial court affirmed that decision based on the notion that the transfer of the assets occurred when the house was sold in 2010, which was during the look-back period of 60 months from the application date. With refreshing candor, the FSSA admits that the agency, the ALJ, and the trial court did not analyze this case properly under the trust statutes and regulations.

[18] Nonetheless, the FSSA argues that Ada is not entitled to relief because at the time she applied for Medicaid benefits in 2012 either (1) she was ineligible for the benefits because the trust held $75,000, the proceeds of the sale of the home, and those funds were available assets to her under the trust regulations; or (2) she was appropriately assessed a transfer fee because the funds from the sale in 2010 were not placed back into the trust or given to Ada, leading to an uncompensated transfer of funds and thus a transfer of assets within the look-back period; or (3) she owes a transfer fee, but a smaller one than was imposed, for selling her home for $75,000, which was $16,900 under the fair market value of $91,900. We address each of these arguments.

[19] With regard to her eligibility for Medicaid, the FSSA is correct that if the Trust contained the proceeds of the sale of the Brown's home, then those assets would be available to her for determining her Medicaid eligibility. Because Ada was able to benefit from the Trust, the Trust assets were resources available to her. But, eligibility was never an issue at the agency level, with the ALJ, or with the trial court; instead, the transfer penalty has been and remains the issue.

Since the issue is not before us, we decline to overrule the eligibility determination of the FSSA.[2]

[20] As to the argument that the proceeds of the sale of the home were never transferred to Ada or the Trust in 2010 and therefore the transfer penalty was properly imposed, it is true that the ALJ concluded that the funds were transferred when the house was sold. The ALJ determined there was an uncompensated transfer in 2010 because there was no evidence the proceeds were placed back in the Trust or given to Ada. However, our review of the evidence reveals that the uncontroverted evidence shows otherwise.

[21] Ada's counsel, Patmore, testified that the Trust received $75,000 in cash for the sale of the house and that those funds were placed back in the Trust. The exhibits, including the settlement statement that shows the Trust received $75,000 in cash for sale of the house, support Patmore's testimony. On the other hand, there was no testimony or evidence that the $75,000 was placed anywhere other than the Trust. The ALJ's conclusion that the proceeds from the sale of the house were transferred because they were not placed back in the Trust is therefore unsupported by substantial evidence.

---

[2] In any event, the proceeds of the sale of the home, which were the corpus of this trust, were $75,000 plus any interest earned between the sale in 2010 and the Medicaid application in 2012. This is less than the $76,227 Community Spouse Resource Allowance that Roy would have been entitled to had Ada transferred her interest in the asset within 90 days of the eligibility determination. Since the 90-day period of time for transfer has long since passed, we decline to remand this case back to the FSSA for it to reopen its eligibility decision and determine whether the transfer was made.

[22]     Finally the FSSA argues that the property was transferred when it was sold for less than its fair market value and therefore a transfer penalty is appropriate for the difference between the fair market value of $91,900 and the sale price of $75,000, or $16,900. In its findings, the ALJ concluded that based on a property-tax assessment, the fair market value of the Browns' home was $91,900. However, under Indiana Medicaid-eligibility requirements, when tax records are used to determine the value of real property, the most recent property tax assessment must be obtained. Indiana Client Eligibility System Manual § 2605.25.10. Further, a tax assessment cannot be used if it is more than one-year old, is under appeal, or is based on a fixed-rate-per-acre method. *Id.* Here, we know nothing about the tax assessment that was used. Specifically, we do not know when the assessment was made—at the time of the sale in 2010 or at the time of the Medicaid determination. The ALJ's conclusion that the fair market value of the Brown's home was $91,900 was therefore also unsupported by substantial evidence.

[23]     Rather, the fair market value is $75,000—the sale price of the home. Fair market value is the price at which property would change hands between a willing buyer and seller where neither is under any compulsion to consummate the sale. *Southtown Props., Inc. v. City of Fort Wayne*, 840 N.E.2d 393, 400 (Ind. Ct. App. 2006), *trans. denied*. Anything affecting the sale value on the date of the taking is a proper matter for consideration in attempting to arrive at a fair market value. *Id.* Generally, all facts which an ordinarily prudent man would

take into account before forming a judgment as to the market value of property he contemplates purchasing are relevant and material. *Id.*

[24] Here, the evidence reveals a willing buyer and seller, albeit with a family relationship, and no evidence that either was under any compulsion to consummate the sale. The evidence further shows that the price of the house was reduced because the sewer system needed to be replaced. In light of this testimony regarding the buyer and the seller, as well as the need for a new sewer system, we find substantial evidence that the house's fair market value was $75,000 at the time of the sale. Accordingly, the transfer penalty was improperly assessed.

[25] Reversed and remanded with instructions to vacate the transfer penalty.

Robb, J., and Pyle, J., concur.